## In re GRIMES et al.

(District Court, W. D. North Carolina. August 25, 1899.)

1. BANKRUPTCY—EXEMPTIONS—SETTING APART.

The provisions of the bankruptcy law requiring the trustee to set apart the bankrupt's exemptions, and report the items and estimated value thereof to the court, are mandatory, and these duties cannot be performed by any one else; and an agreement between a bankrupt and his creditors that the exemptions shall be valued and allotted by three appraisers, whose decision shall be final, and not subject to exception, is void; and an order made by the referee, by consent of parties, in the terms of such agreement, will be set aside.

2. SAME—APPRAISEMENT.

There is no provision of the bankruptcy law authorizing the valuation by appraisers of the property claimed by the bankrupt as exempt. Where the appraisers value the entire estate of the bankrupt, as provided by law, their inventory is not binding on the trustee, as respects the exempt property, nor can he adopt it as his own.

3. SAME—BANKRUPT'S RIGHT OF SELECTION.

Where the law of the state exempts to a debtor personal property to a certain value, "to be selected by him," the debtor, on being adjudged bankrupt, has the right to select specific personal property, to that value, from the estate in the hands of his trustee; and although his personal estate consists of a stock of goods not divisible without loss, nor salable except as a whole, yet the court cannot order the trustee to sell the whole stock and pay the bankrupt the value of his exemptions out of the proceeds.

4. SAME—RENT—PAYMENT OUT OF EXEMPTION.

The court cannot order a trustee in bankruptcy to pay rent, overdue at the time of the adjudication, out of the property to be set apart to the bankrupt as exempt, although the bankrupt had so agreed with the landlord before the commencement of the proceedings.

5. SAME—JURISDICTION OVER EXEMPT PROPERTY.

When the bankrupt's exempt property has been designated and set apart to him by the trustee, it has been administered. so far as the proceedings in bankruptcy are concerned; and thereafter the court has no jurisdiction either to defend such property from adverse claims or liens or to enforce liens upon it.

6. SAME—COSTS OF ADMINISTRATION—STORAGE CHARGES.

If a trustee in bankruptcy continues to occupy premises leased by the bankrupt, using them for the storage of the goods of the estate until the same can be sold, the landlord is entitled to compensation for the use of his property by the trustee, the amount thereof being chargeable as part of the cost of administering the estate.

7. SAME—PAYMENT BY TRUSTEE.

If the trustee has no cash in hand with which to pay storage charges to a landlord whose property he has occupied for the storage of the bankrupt's goods, he may be ordered to sell sufficient personal property for that purpose; and this will take precedence of the bankrupt's claim to have his exemptions set apart out of such personalty.

In Bankruptcy. On review of decision of referee in bankruptcy.

Glenn & Manly, for bankrupts.

L. M. Swink, A. H. Eller, Jones & Patterson, and Watson, Buxton & Watson, for creditors.

EWART, District Judge. On the 30th day of May, 1899, the referee acting in the above-entitled cause directed the trustee of the above-named bankrupts to set aside the bankrupts' exemptions, and

report the items and estimated value thereof to the referee in bankruptcy as soon as practicable. Before the allotment of the said exemptions, a demand for their property exemptions in kind was made by both bankrupts, T. W. and E. E. Grimes. Pending the setting apart of these exemptions, and after due advertisement to all creditors of the time and place of meeting, there was held on July 4, 1899, a general meeting of the creditors of the bankrupts, and at said meeting a majority of all the creditors, representing about $2,900 of a total indebtedness of $3,100, were present, and took part in the proceedings then had. At said meeting, with a full knowledge of all the facts in the case, all the creditors present, representing over $13/14$ of all the debts, entered into an agreement, and a consent order was entered by the court, that E. E. Grimes should receive his exemptions in money, and that T. W. Grimes should receive his exemptions in kind, to be laid off and alloted by appraisers, their allotment being final, and not subject to exception. The consent order thus made was approved by the referee, and in compliance therewith the trustee was directed to carry out the terms of the said order, and, in order to do this to the entire satisfaction of all parties, he chose three appraisers to value the goods selected, allowing the creditors to name two of the appraisers, to wit, J. C. Bessent, a justice of the peace, and E. T. Kapp, the sheriff of the county, while he named ―――― Cox, a man of good business qualifications. The appraisers thus selected set apart T. W. Grimes' exemptions in kind, and the trustee approved and adopted their appraisement, and so reported to the court. The trustee was proceeding to carry out the order of the court when he was enjoined from further action under said order, upon the petition of certain creditors, representing about $200 of debts, and who were notified, but not present at the meeting of July 4th. The restraining order was served July 15th. In this petition said creditors represented: (1) That they were not present when said consent order was made, and that the same was not binding upon them; (2) that the exemption set aside to T. W. Grimes was excessive; (3) that it would be unjust and inequitable to set aside to the bankrupts, or either of them, their exemptions in kind, but that the property should be sold as a whole and their exemption paid in money; (4) that, as a matter of law, a drug business was incapable of division, and exemptions could not be set aside in kind; (5) that there was a responsible party willing to pay $2,000 for said stock of drugs. On July 17th, parties interested appeared; when the matter was continued until July 20th,—the restraining order being modified, by consent of all parties, so as to allow the trustee to sell the residue of stock, after laying off T. W. Grimes' exemptions, which he did, said sale amounting to $375; the low price, according to his report, being on account of the cloud on the title. Previous to said restraining order being issued, T. W. Grimes sold his exemptions to W. B. Pollard for $500, but had not divided the same, as the stock of goods was in the custody of the trustee in bankruptcy. On July 20th, the bankrupts filed their answer to said restraining order, and the creditors who had made the consent order asked that they be discharged from their agreement made in writing on July 4th. On July 20th, after hear-

ing argument, the referee set aside the order of July 4th, on the grounds: (1) That it was not binding on the creditors who were not present, though affected with notice; (2) that there was no authority for making said agreement or interlocutory order under the bankrupt act; (3) that if there is such authority it was an order in fieri, and that, the bankrupt court being a court of equity, it could be set aside at any time by the referee; (4) that the agreement could not be carried out in good faith, because there would not be sufficient assets, after T. W. Grimes had his exemptions, for E. E. Grimes to get his, or the creditors anything. The referee, therefore, set aside said order of July 4th, restoring all parties to the position in which they were prior to said agreement made in writing July 4th, and further found that said property, being incapable of division, should be sold, and the exemptions paid the bankrupts in money, and the balance administered under the bankrupt act, and that the sale to W. B. Pollard should be set aside. To the above order of the referee the bankrupts filed the following exceptions: (1) That the referee erred in holding that the order of July 4th was not binding on all the creditors; (2) in his holding that the order was in fieri, and could be set aside or modified at any time; (3) that the business of a drug store was incapable of division, and that, therefore, the bankrupts were not entitled to their exemptions in kind, but should receive the same in money.

The action of the appraisers in appraising and setting apart the exemptions of T. W. Grimes, in pursuance of an agreement entered into on the 4th day of July, 1899, between certain creditors of the bankrupt firm and the bankrupts, before the referee, and with his approval, to the effect that T. W. Grimes should receive his exemptions, to be set apart from the stock of goods in the hands of the trustee, and that E. E. Grimes, the other partner, should be paid the amount of his exemptions, to wit, $500 in cash from the proceeds realized from the sale of the balance of the stock of goods, and that said allotment should be final, and not subject to exceptions on the part of either of the bankrupts or their creditors, must be set aside. Such agreements cannot be recognized in a court of bankruptcy. The law as to the duties of trustees in setting apart the exemptions in bankruptcy is mandatory. Bankruptcy Act 1898, § 47, subsecs. 10, 11, prescribe that the trustees shall—

"(10) Report to the courts, in writing, the condition of the estates, and the amounts of money on hand, and such other details as may be required by the courts, within the first month after their appointment and every two months thereafter; * * * (11) set apart the bankrupt's exemptions and report the items and estimated value thereof to the court as soon as practicable after their appointment."

Exceptions to such allotment may be filed by the bankrupt, or by any creditor, within 20 days after the same has been made and filed with the clerk or referee. This duty cannot be performed by any other party. It is wholly and entirely the duty of the trustee, and any agreement on the part of the bankrupt or the creditors that the exemptions shall be allotted in any other manner than that prescribed by the bankruptcy law, or through other agencies than that of the

trustee of the bankrupt, is a nullity. An impression seems to prevail that appraisers may be selected to value the exemptions to be set apart to the bankrupt, and even so careful a writer as Mr. Loveland, in his most excellent work on the Law and Proceedings in Bankruptcy, in his comments on the subject of exemptions, seems to have fallen into this error. On page 348 he says: "If it becomes necessary to appraise exempt property for the purpose of setting it off, it may be appraised, like other property of the bankrupt, by three disinterested appraisers appointed by the court;" and he cites, in his notes on the same page, Bankruptcy Act 1898, § 70, subsec. b. On examination of this section, the only reference to the appointment of appraisers is found in section 70, subsec. b. This prescribes that "all real and personal property belonging to bankrupt estates shall be appraised by three disinterested appraisers; they shall be appointed by and report to the court. Real and personal property shall, when practicable, be sold subject to the approval of the court; it shall not be sold otherwise than subject to the approval of the court for less than seventy-five per centum of its appraised value." It will be observed that this subsection in no wise authorizes and empowers appraisers to either value or set apart the bankrupt's exemptions. As a matter of course, in many cases in bankruptcy where the assets are nominal, and do not exceed the exemptions allotted, this appraisal is not necessary; but, where the assets are in excess of exemptions, the statute clearly requires that the property should be appraised. This inventory filed by appraisers may aid the trustee in making his allotment, but he is not in any wise concluded by it, nor has he any right to adopt it as his own. The object of the statute in requiring an appraisal of the estate of a bankrupt is evidenced by the last clause of this subsection, to wit: "The real and personal property shall not be sold * * * for less than seventy-five per centum of its appraised value." There were other exceptions to the allotment made by the appraisers of the bankrupts' exemptions, consideration of which is not necessary, as the allotment was fatal, for the reason above shown.

It appearing in this case that the assets of the bankrupts are considerably in excess of the exemptions allowed by law, it is ordered that the referee select three disinterested parties as appraisers, who shall, after being duly sworn by the referee, appraise the entire estate of the said bankrupts, and report their action to this court. On the filing of this inventory, the trustee shall proceed to set apart the exemptions of T. W. Grimes and E. E. Grimes, bankrupts.

It is insisted by counsel for creditors that the stock of goods owned by the bankrupts in this case, being a stock of drugs, is incapable of division, and that exemptions, therefore, cannot be made in kind, as it would leave a bare remnant of the stock, from the sale of which little could be realized. It is further insisted that a court of bankruptcy is a court of equity, and that it would be inequitable to permit the bankrupts to select their exemptions from the stock of goods, leaving a remnant of perhaps worthless and unsalable stock, thereby entirely defeating the claims of the creditors. It is urged by the creditors that equity and justice require that this stock of goods be sold as a whole, and that the exemptions should be paid in cash to the bank-

rupts from the funds so realized. But while it is true that the court of bankruptcy is a court of equity, it can neither take from nor add to the law as it is written. Bankruptcy Act 1898, § 6:

"This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

The exemptions in force at the time of the filing of the petition in bankruptcy by Grimes Bros., in the state of North Carolina, are prescribed by the constitution of 1876 (article 10, § 2):

"Every homestead, and the dwellings and buildings used therewith, not exceeding in value $1,000, to be selected by the owner, or in lieu thereof, at the option of the owner, any lot in a city, with the dwellings and buildings used thereon and occupied by a resident of the state, and not exceeding $1,000 in value, is exempt from process. * * * The personal property of any resident of the state, to the value of $500, to be selected by him, is exempt, except as to taxes or obligations contracted for the purchase price."

The Code of North Carolina (page 199, § 507) prescribes:

"Whenever the personal property of any resident of this state shall be levied upon by virtue of any execution or other final process issued for the collection of any debt, and the owner or any agent, or attorney in his behalf, shall demand that the same, or any part thereof, shall be exempt from sale under such execution, the sheriff or other officer making such levy shall summon three appraisers, as heretofore provided, who having been first duly sworn, shall appraise and lay off to the judgment debtor such articles of personal property as he, or another in his behalf, may select, and to which he may be entitled under this chapter and the constitution of the state, in no case to exceed in value five hundred dollars, which articles shall be exempt from said levy, and return thereof shall be made by the appraisers, as upon the laying off of a homestead exemption."

In Frost v. Naylor, 68 N. C. 326, Justice Read says:

"A chose in action can be selected by the debtor as a part of his personal property exemptions. The phrase 'such other property,' used in the constitution, must be understood to mean such like property as had been expressly named. But the language of our constitution is different. It does not mean any property, but exempts 'personal property of the value of five hundred dollars, to be selected by the debtor.' The allotment may be made from time to time, and as often as the debtor may be pressed with executions; the policy being to enable the debtor not only to have the exemptions allotted to him once, but to keep them about him all the time, for the comfort and support of himself and family. Such is the policy of our constitutional provision, and it allows the debtor to select what he thinks most useful."

See, also, Oakley v. Van Noppen, 96 N. C. 247, 2 S. E. 663; Campbell v. White, 95 N. C. 491.

The trustee can have no discretion in setting apart the exemptions to a bankrupt. The bankruptcy act of 1898 is mandatory. The bankrupt is entitled to make his own selection, under the homestead laws of North Carolina; and in the case at bar he has demanded, and is entitled, to have his exemptions set apart from the stock of goods now in the possession and custody of the trustee. This stock is said to consist almost entirely of drugs, and is incapable of division. But it is nevertheless personal property, consisting, as it does, of soda-water fountains, counters, prescription cases, and all the appointments of a drug store; and, if the debtor demands certain articles

from the said stock to be set apart to him as his exemptions, he is entitled to have it done. It is true that it may leave on the hands of the trustee, as contended, a small remnant of unsalable, and perhaps virtually worthless, goods, and it may appear unjust and inequitable to creditors that this should be, but "lex ita scripta est." Besides, creditors can hardly complain, as debts are contracted in this state with full knowledge of its liberal constitutional homestead provisions.

In the matter of the claim of L. W. Schouler against the trustee of Grimes Bros., bankrupts, it appears that Grimes Bros. held a lease on the premises in which they carried on their business from Schouler, and which expired December 31, 1898. On the 25th day of December, 1898, the firm of Grimes Bros. had executed a deed of assignment, under the laws of North Carolina, to one Nading, as assignee. At the date of this assignment the firm owed Schouler $175, for rent of the said premises preceding the adjudication in bankruptcy. The assignee, Nading, who was, on the adjudication of the bankrupts, named by the creditors as trustee, has so far neglected or declined to pay rental for the said premises which has accrued since the adjudication of Grimes Bros., bankrupts, though he has been continually in possession of the said storehouse of Schouler's, and using the same as a warehouse for the storage of the stock of goods of the bankrupt firm. Counsel for Schouler insists that an order should be made by this court requiring Nading, trustee, to deliver to Schouler $121.70 out of the exemptions of T. W. Grimes, in pursuance of an agreement of T. W. Grimes, with claimant Schouler, prior to the institution of involuntary proceedings in bankruptcy by creditors against Grimes Bros., and their adjudication in bankruptcy. This order the court declines to make. The title to exempt property does not pass to the trustee; it is vested in the bankrupt. Bankruptcy Act 1898, § 70, a. He may sell it or mortgage it. But, while this is true, property of the second class cannot be considered exempt property until it is selected and set apart. Woolfolk v. Murray, 44 Ga. 137, 138. It must necessarily pass to the trustee, who has temporary dominion over it until the exemptions are made. His title may be termed a defeasible title. When the exemptions are formally set apart by the trustee, and affirmed by the court, the title of the bankrupts then becomes superior to that of the trustee, and absolute. After the exempt property has been designated and set apart to the bankrupts by the trustee, it has been administered, and has passed out of the possession and control of the bankruptcy court. The trustee has no further concern with it, nor has the court any jurisdiction to defend such property from adverse claims or liens that may or may not be distinguished by the bankruptcy proceedings. It will not entertain a proceeding to enforce a lien upon such property. Jeffries v. Bartlett, 20 Fed. 496; In re Preston, 6 N. B. R. 545, Fed. Cas. No. 11,394; In re Hunt, 5 N. B. R. 493, Fed. Cas. No. 6,883; In re Camp, 91 Fed. 745. Such a lien may be enforceable in a state court without regard to any pending proceedings in bankruptcy. But the claim of Schouler for rental of the premises used and occupied by Nading, trustee, since the adjudication in bankruptcy, stands upon a different footing. This claim must be paid by the trustee.

Section 64, b, Bankruptcy Act 1898, prescribes "that there shall be paid the actual and necessary cost of preserving the estate subsequent to filing the petition." "Expenses of a sale should be paid out of the estate of the bankrupt, and such costs are left by the statute to the discretion of the court, and must be disposed of on equitable principles." Where a party enjoys the aid of a court of bankruptcy, he should pay the costs incurred in obtaining this aid. Loveland, Bankr. 580. Bankruptcy Act, § 2 [18], says: "Courts of bankruptcy are vested with jurisdiction, both in law and equity, to tax costs whenever they are allowed by law, and render judgments therefor against the unsuccessful party, or in part against each of the parties and against the estate in bankruptcy." It cannot be seriously contended that the occupancy of this storehouse was not necessary to preserve the stock of goods of Grimes Bros.

Schouler has not been guilty of any laches in the matter; for it appears that he has repeatedly demanded the possession of the premises, and has made every effort in his power to obtain the same. He could not have forcibly ejected Nading or dumped the stock of drugs into the street. The bankrupts' property has been thus preserved; but the bankrupts insist that their exemptions must first be set apart to them, and, if there be anything left, Schouler's claim for rental since their adjudication, and the legal and necessary expenses incurred in closing up the estate, can be paid out of the remainder of the estate of the bankrupts. This contention cannot be maintained either on legal or equitable grounds. The rental for the storage of the goods of the bankrupt firm is part and parcel of the legitimate costs incurred in this case, and is a lien upon the estate of the bankrupts, or any assets that may be in the hands of the trustee, or that may hereafter come into his hands. In re Collier, 93 Fed. 194; Norman v. Craft, 90 N. C. 211; Latta v. Bell, 122 N. C. 639, 30 S. E. 15. "For the time the trustee is compelled to occupy the premises he should of course pay rent, and it should be treated as a part of the expenses of administering the proceeds of the estate." In re Jefferson, 1 Nat. Bankr. News, No. 12, p. 288, 93 Fed. 948. A trustee in bankruptcy who would permit an estate in his custody to be wasted or damaged when he is in possession of property of the bankrupt, sufficient to realize funds therefrom to prevent such waste or damage, would be grossly negligent, and would be subject to removal from his trust.

The able counsel for the bankrupts doubtless overlooked section 510 of the Code of North Carolina. This reads:

"The costs and expenses of appraising and laying off the homestead or personal property exemptions, when the same is made under execution, shall be charged and included in the officer's bill of fees upon such execution or other final process, and when made upon the petition of the owner they shall be paid by such owner, and the latter costs shall be a lien on said homestead."

In the case at bar it will be observed that the bankrupts demanded their exemptions set apart to them in kind. In this case it was the duty of the trustee, if he had no available funds on hand, to sell so much of the stock of goods in his custody as might have been necessary to defray storage account, etc. The costs of storage of the stock

of goods in this case is, under the circumstances, as much a part of the costs in this matter as the costs incurred by the trustee in formally setting apart the exemptions of the bankrupts.

The action of the referee in the above-entitled case, in confirming the report of the appraisers, is set aside, and it is ordered and adjudged that the referee appoint three disinterested parties, who, after being duly sworn by him, shall appraise the entire estate of the bankrupts, T. W. and E. E. Grimes, trading as Grimes Bros. On the filing of this inventory, the trustee of the said bankrupts shall immediately proceed to set apart the exemptions of the said Grimes Bros., allotting to each member of the firm, out of the partnership assets, such articles of personal property, or articles from the stock of goods in his hands, as may be selected by the said T. W. and E. E. Grimes, to the amount and value of $500 each; which said report shall be filed in court, and be subject to such exceptions as may be entered by creditors within 20 days' notice after the filing of such report. It is further ordered that the trustee, R. W. Nading, shall pay to L. W. Schouler the sum of $———, the amount due for rent of storehouse used for the storage of the stock of goods of Grimes Bros. from the ——— day of January, 1898, the date of the adjudication of the bankruptcy of the said firm; and, if the said Nading shall have no available funds to pay said claim, he shall immediately sell so much of the said stock of goods as may be necessary to pay the amount of said storage to said Schouler, filing with the court an itemized statement of the articles sold, and the amount realized therefrom, and the full amount paid L. W. Schouler, with his receipt therefor. After the allotment of the exemptions allowed by law, it is further ordered that the trustee sell the residue of the said stock for cash to the highest bidder, at Winston, N. C., after giving 10 days' notice of time and place of sale, and file his report with the clerk of this court.