Binzel vs. Grogan.

BINZEL, Respondent, vs. GROGAN, Appellant.

*October 15 — November 3, 1886.*

HOMESTEAD: EXECUTION. *(1) Exemption of proceeds of sale: Sale of realty and personalty for gross sum. (2) Use of part of proceeds. (3) Homestead crossed by public alley. (4) Land not in village or city and not "used for agricultural purposes."*

1. Where a debtor sells his homestead together with personal property for a gross sum, the exemption extends to such portion of the proceeds, not exceeding the value of the homestead, as he holds with the intention of procuring another homestead.
2. The use by the debtor of a portion of the proceeds of the sale of his homestead to pay debts and maintain his family does not destroy his right to the exemption of the balance.
3. The fact that a public alley crosses a tract of land which is used as a homestead, cutting off a small portion on which the barn stands, does not defeat the homestead right·as to that portion.
4. By sec. 2983, R. S., the legislature intended fully to execute the mandate of sec. 17, art. I, of the constitution, and under that statute the homestead of a debtor, which he owns and occupies, together with the specified quantity of land appurtenant thereto, is exempt from seizure or sale, without regard to the use to which he put such land or the business he pursues thereon.

APPEAL from the Circuit Court for *Milwaukee* County.

The plaintiff recovered a judgment against the defendant, and issued execution thereon, which was returned unsatisfied. He then commenced a supplementary proceeding before a court commissioner, and the defendant appeared before that officer, pursuant to an order in that behalf, and made answer concerning his property. This was in March, 1885. His answer disclosed that he had theretofore owned some land at the railroad station of Sullivan, in Jefferson county, on which was situated a hotel building and outhouses. The quantity of land was between half an acre and one acre. He lived in the building with his family, and carried on the hotel business. In August, 1884, he sold

the real estate, the furniture in the hotel (which belonged to his wife and was worth $300), two buggies worth $140, an organ worth $75, and a horse (value not stated), all for the sum of $3,000, which was paid him by the purchaser. He then removed to Milwaukee with his family, rented a house for a month, and commenced keeping a boarding-house and bar-room therein. He was engaged in the same business at the same place when he answered before the commissioner.

Of the money he received for the Sullivan property, he paid his wife $300 for the furniture, and also paid debts, including a mortgage on that property, to an amount which left him but $1,600 of the purchase money when he moved to Milwaukee. He has since used $200 in the support of his family; the profits of his business being insufficient for that purpose. He always intended to purchase a home-stead with the proceeds of the Sullivan property. When he answered, he had $1,400 of such proceeds in his hands, with which he intended to purchase such homestead.

The defendant never raised any produce on the Sullivan property. It was unfenced, and all of it was used for the purposes of the hotel. This property was not in any city or village.

The foregoing facts were not controverted. The com-missioner appointed a receiver, and ordered the defendant to pay over to him, out of said $1,400, for the use of the plaintiff, a sum sufficient to satisfy the plaintiff's judgment and the costs of the proceeding. Such order was brought before the circuit court for review by appropriate proceed-ings, and that court affirmed the order of the commissioner. The defendant appeals from the order of the circuit court in that behalf.

*J. A. Eggen*, for the appellant.

For the respondent the cause was submitted on the briefs of *Thompson & Dorr*.

LYON, J. If the real estate which the defendant owned at Sullivan station was his homestead, the proceeds thereof remaining in his hands when he answered in the supplementary proceedings were exempt from seizure, and he could not lawfully be compelled to pay the plaintiff's judgment out of the same. That he constantly intended to use as much as $1,400 of such proceeds in the purchase of another homestead, satisfactorily appears from the uncontroverted statements in his answer. This renders the money exempt by virtue of the statute if the Sullivan property was a homestead. R. S. sec. 2983. That he used a portion of such proceeds to pay his debts and maintain his family does not deprive him of the right to such exemption if he is otherwise entitled thereto. Neither is it material that the sale of the Sullivan property included personal as well as real property, and was for a gross sum. The defendant stated in his answer that the house and furniture were worth $2,000, and that the furniture was worth $300. This would make the house worth $1,700, without regard to the balance of the realty. It is clear enough from the whole answer that the defendant received more than $1,400 for the realty, and he has the right to hold the $1,400 in his hands as the proceeds of the sale of the realty alone.

The fact that a public alley crossed the land, cutting off from the rest a small parcel, on which stood the barn, does not defeat the homestead right to that parcel if the balance was a homestead. The fee to the alley was in the defendant, subject only to the public easement or right of way over it, and the whole of the real estate constituted but a single parcel, notwithstanding such easement.

Hence the controlling question in the case, and the only one which requires any further discussion, is, Was the Sullivan real estate the homestead of the defendant, under the exemption laws, before and at the time he sold the same in August, 1884? The learned commissioner and circuit court

held that it was not.  It is maintained that those rulings were correct, because the land was not "used for agricultural purposes," within the meaning of that phrase as employed in sec. 2983, R. S.  That section, so far as it is material to this proceeding, reads as follows: "A homestead, to be selected by the owner thereof, consisting, when not included in any city or village, of any quantity of land not exceeding forty acres, used for agricultural purposes, and when included in any city or village, of any quantity of land not exceeding one fourth of an acre, and the dwelling-house thereon and its appurtenances, owned and occupied by any resident of this state, shall be exempt from seizure or sale on execution, from the lien of every judgment, and from liability in any form for the debts of such owner, except laborers', mechanics', and purchase money liens, and mortgages lawfully executed, and taxes lawfully assessed, and except as otherwise specially provided in these statutes; and such exemption shall not be impaired by temporary removal with the intention to reoccupy the same as a homestead, nor by a sale thereof, but shall extend to the proceeds derived from such sale while held with the intention to procure another homestead therewith, for a period not exceeding two years."

Unless the orders of the commissioner and circuit court can be upheld on the ground above suggested, they cannot stand.  This brings us to the question, Do the words "used for agricultural purposes," as employed in the statute, exclude the appellant from the benefit of the homestead exemption therein given?  To ascertain the literal meaning of the words "agricultural purposes" resort must be had to the lexicons for definitions of "agriculture."  Webster tells us (accurately enough, no doubt) that it is "the art or science of cultivating the ground, especially in fields or in large quantities, including the preparation of the soil, the planting of seeds, the raising and harvesting of crops, and the rear-

ing, feeding, and management of live-stock; tillage; husbandry; farming." The defendant did none of these things on his Sullivan land, unless, perhaps, he kept and fed his horse there; and if the literal construction of the statute prevails he had no homestead rights in the property, unless the same were saved by the keeping and feeding of the horse on the premises. If that was one of the purposes for which he used the premises, it must be conceded, we think, that they were used for one "agricultural purpose" at least.

But we do not think the statute should receive a literal construction. Our constitution contains an imperative mandate to the legislature to enact exemption laws. It is ordained in art. I, sec. 17, of that instrument, that "the privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted." This provision was inserted in the constitution for the benefit of all resident debtors, and an exemption law which protects only certain classes of debtors, leaving others unprotected, would not be a compliance with the constitutional mandate. The enactment of a homestead exemption law was absolutely essential to the proper execution of such mandate, because, without it, in many cases debtors would fail to realize the full benefits which the framers of the constitution, and the people who adopted it, intended they should receive under the exemption laws which the legislature was required to enact. Many personal property exemptions would be comparatively valueless to a debtor unless his homestead is protected from seizure. Moreover, a home is one of "the necessary comforts of life," in the enjoyment of which the legislature was required to protect every debtor.

The homestead exemption law, above quoted, was enacted

pursuant to the mandate of the constitution, and there is no reason to doubt that the legislature thereby intended fully to execute such mandate. By such statute, therefore, the legislature intended to exempt to every debtor in the state the homestead which he owns and occupies, with a specified quantity of land appurtenant thereto, without regard to the uses to which he puts such land or the business he pursues upon it. All that is required is that it be his homestead, and the statute was intended to protect the owner in the enjoyment of it.

The fisherman may build his home upon the barren beach, using his land only for the spreading of his nets and the mooring of his vessels; or the hunter may build his home in a forest, and make no use whatever of his land appurtenant to his dwelling except to pass over it; yet we entertain no doubt whatever that the legislature intended, by the enactment of sec. 2983, to protect these men by exempting their homesteads from seizure for debt. The same is true of the present case, where the debtor used his lands appurtenant to his residence exclusively in connection with his hotel business.

It would be a gross imputation upon either the intelligence or honesty of the legislature — indeed of many legislatures — to say that in this case, and in the cases of the fisherman and hunter above suggested, no exemption was intended, but that if either of these owners should raise a bushel of beans or other produce annually upon his land, or pasture a cow upon it, then in such case an exemption was intended.

The first homestead exemption law was enacted in July, 1848, at the first session of the legislature after the adoption of the constitution. It has been amended from time to time, but those provisions which affect the question under consideration have remained unchanged to the present time. The law has frequently been before the courts for construction.

Before this case arose the unchallenged practical construction given the law by bar and bench was that it secured an exemption to every owner of a homestead, without regard to the uses to which the land appurtenant to his dwelling and residence might be put. Now, however, after the lapse of nearly forty years it is contended, for the first time so far as we are advised,— certainly for the first time in this court,— that a debtor owning a homestead outside a village or city can have no benefit of the homestead exemption law unless he raises produce or domestic animals on his land. It goes for nothing that he rears a family upon it, and that a homestead is exempted from seizure for debt chiefly to enable its owner to do so.

We are of the opinion, and so hold, that the practical construction above mentioned is the true one, and hence that the defendant's Sullivan property was exempt from seizure and sale for his debts while he owned it. For reasons above stated the proceeds of the sale thereof were also exempt when the orders in question were made by the commissioner and circuit court, respectively.

To support these conclusions it is not essential that we define the precise signification of the phrase "used for agricultural purposes," as employed in the statute. It is sufficient to show that it cannot properly be construed or defined in a way that will exclude any debtor who owns and occupies a homestead in this state from the benefit of the exemption given by the statute. This we have endeavored to show. It may be suggested, however, that inasmuch as lands outside of villages and cities are usually agricultural lands, and when occupied are chiefly used for agricultural purposes, the phrase may have crept into the law of 1848 as a mode (although perhaps an awkward one) of expressing the distinction between city or village property, in respect to which the exemption is limited to one fourth of

an acre, and agricultural or country property, forty acres of which may be exempt.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded with directions to that court to reverse and set aside the order of the court commissioner requiring the defendant to pay to the receiver the amount of plaintiff's judgment, together with the costs, out of the proceeds of the sale of his homestead at Sullivan.

See note to this case in 29 N. W. Rep. 895.— Rep.