·WILL OF BRESNEHAN : BRESNEHAN, Executor, Appellant, vs. BRESNEHAN, Respondent.

*January 8—March 31, 1936.*

53

For the appellant there was a brief by *Kelley & Boerner* of Fond du Lac, and oral argument by *J. L. Kelley.*

For the respondent there was a brief by *Duffy, Duffy & Hanson,* attorneys, and *Ervin A. Weinke* of counsel, all of Fond du Lac, and oral argument by *Mr. Weinke.*

The following opinion was filed February 4, 1936:

MARTIN, J. The main question for our consideration is the construction of the will set out in the foregoing statement of facts. This does not necessarily involve a consideration of the question of the validity of the adoption proceedings. The widow has not declined to take under the will.

An elementary rule for judicial construction of a will is that the intention of the testator should prevail so far as it can be read out of the language used to express it. In *Will of Ehlers,* 155 Wis. 46, 143 N. W. 1050, this court, speaking through Justice MARSHALL, said:

"The court has very great power which may be exercised to prevent failure of a testator's purpose, all in harmony with the rule that the legal intention of the testator is the one expressed by his language, though it may not be exactly the real intention he had in mind,—that his purpose can be given vitality only so far as it can be read reasonably out of the will,—but to the end that the testamentary idea may be so read the language should be examined in the light of the situation of the testator at the time he used it and all environing circumstances. . . . True, the heir at law is to be favored, but that is a rule to aid in making a choice between reasonable meanings. True, too, ordinarily, the last clause of two which conflict, is supreme, but it has no application where the effect would be to defeat the real intent."

See *Will of Fouks,* 206 Wis. 69, 238 N. W. 869; *Will of Cuppel,* 206 Wis. 586, 240 N. W. 144; *Ohse v. Miller,* 137 Wis. 474, 119 N. W. 93; *In re Donges's Estate,* 103 Wis. 497, 79 N. W. 786; *Will of Owens,* 164 Wis. 260, 263, 159 N. W. 906; *Will of Stephens,* 206 Wis. 16, 238 N. W. 900; *Will of Richter,* 215 Wis. 108, 254 N. W. 103; *Will of Grotenrath,* 215 Wis. 381, 254 N. W. 631; *Will of Weed,* 213 Wis. 574, 252 N. W. 294.

In *Will of Richter, supra,* this court said:

"Certain rules of construction may be passed with simply a statement of them, as they are too well established to warrant extended consideration. The first is that all rules of construction yield to the cardinal rule that the words of a will are to be construed so as to give effect to the intention of the testatrix, which intention is to be ascertained from the language of the will itself, in the light of the circumstances surrounding the testatrix at the time of its execution."

The court found and so adjudged "that the second provision of said will of said deceased, to wit: 'I give, devise, and bequeath to my wife, Katherine Bresnehan, all that part of my estate to which she is entitled under and by virtue of the laws of the state of Wisconsin, the same as though no will had been by me made' properly construed to convey the intention of the testator as gathered from the whole will and surrounding circumstances hereby is construed to mean that the said Katherine Bresnehan, widow, should receive the same property as she would have received if the said William Bresnehan had died intestate." Such construction completely ignores the third and fourth paragraphs of the will of deceased. Apparently, the court having reached the conclusion that the adoption of the nephew, John Bresnehan, was null and void, and that the widow was the sole heir at law of her deceased husband, it concluded that the will should be construed as though the husband had died intestate. We agree with the county court, for the reasons hereinafter stated, that the adoption proceedings are null and void, but such conclusion does not justify a construction of the will of deceased entirely eliminating from consideration the third and fourth paragraphs thereof. It must be construed, if possible, so as to give effect to every part thereof, and a construction is to be preferred which will sustain the provisions of the will rather than to defeat them. *Will of Southard,* 208 Wis. 148, 242 N. W. 583.

There can be no doubt as to the fact that the deceased believed that his nephew, John Bresnehan, was also his son by adoption. He so states in the third paragraph of his will. When we approach a consideration of the testator's intent as expressed in the second paragraph in the light of his belief that his nephew John was his son by adoption, the intent is manifest. The invalidity of the adoption proceedings has no weight in arriving at the testator's intention. Believing that John's status was that of a son and heir at law, he knew that

his widow would get her dower and homestead rights if he left no will. This is made clear by the third paragraph of the will under which deceased gave the home to John, subject to the homestead and dower right of his widow.

In 1 Page, Wills (2d ed.), p. 1374, § 811, the author states:

"The courts approach the problem of construing a will with a *prima facie* assumption that the testator, in drawing and executing his will, had a purpose which was clear, definite and consistent throughout; and they will attempt to find this intention by construing every part of the will with reference to every other part, so that, if possible, the court will construe the will as a whole, and will give effect to every provision of the will."

Applying this rule to the instant case, to sustain the county court's construction of the will, we would have to hold as meaningless the third and fourth paragraphs thereof. This we cannot do. In the light of the circumstances surrounding the testator at the time of its execution, we conclude that the will must be construed so as to give effect to both the second and third paragraphs. Keeping in mind the testator's belief that his nephew John was his son and legal heir by adoption, we must hold that it was the testator's intention to give to his wife her dower and homestead interest in the home, which is the interest she would receive under the law, assuming the nephew to be a legal heir, providing deceased had left no will. Having reached this conclusion, the third paragraph must be construed as the testator's intention to give the home to the said John Bresnehan, subject to the homestead and dower rights of Katherine Bresnehan.

We agree with the finding of the county court that the entire premises as described in Finding No. 5 constituted the homestead of deceased at the time of his death. The homestead laws of this state have always been liberally construed in favor of homestead rights. *Eaton Center Co-Op. Cheese*

*Co. v. Kalkofen,* 209 Wis. 170, 173, 244 N. W. 620. Referring to the homestead exemption statute, in *Binzel v. Grogan,* 67 Wis. 147, 152, 29 N. W. 895, the court said:

"By such statute, therefore, the legislature intended to exempt to every debtor in this state the homestead which he owns and occupies, with a specified quantity of land appurtenant thereto, without regard to the uses to which he puts such land or the business he pursues upon it. All that is required is that it be his homestead, and the statute was intended to protect the owner in the enjoyment of it."

*Larson v. State Bank of Ogema,* 201 Wis. 313, 230 N. W. 132. In the instant case the area does not exceed one quarter of an acre, but, according to the appraisal, it exceeds $5,000 in value over and above the $1,200 mortgage incumbrance. It appears that the whole of the premises with improvements was appraised at $7,500, and that claims totaling $4,281.55 have been filed against the estate. If, upon proper proceedings taken in the county court for a sale of said homestead for the purpose of paying claims filed and allowed against the estate and expenses of administration, the homestead cannot be sold for a sum in excess of $5,000 over and above incumbrances then, and in such event, it shall be assigned to the said John Bresnehan named in the third paragraph of deceased's will subject to the homestead and dower rights of the widow as here construed. If in such proceedings the homestead can be sold for a sum in excess of $5,000 over and above the mortgage incumbrance and accrued taxes, such sale being approved by the court, all in accord with ch. 316, Stats., the sum set apart as the value of the homestead shall be applied and paid in the manner provided in sec. 316.11 (3), Stats., that is, the widow shall be paid the value of her dower and homestead interest and the remainder will be paid to John Bresnehan.

The widow is entitled to all the rents collected by the executor on the homestead property and premises, less any

amounts paid for taxes, insurance, interest on the mortgage, and repairs, and the executor should account therefor. The widow is further entitled to all the articles and items of personal property specified in sec. 313.15, Stats., including the diamond stick pin and gold watch to which reference has been made. It is obvious, in view of the insolvent condition of the estate, that there will be no residue to be assigned under the provisions of the fourth paragraph of the will. However, should there be any residue, it will be assigned in accord with the provisions of said Paragraph IV.

While we have held, in construing the will, that the validity of the adoption of the nephew, John Bresnehan, had no weight in arriving at the testator's intention, we have that question for consideration, since the widow, by her petition herein, alleges the facts in connection therewith and directly challenges the validity of said adoption. Proceedings for the adoption of children are purely statutory. It is conceded that the wife did not join in the petition for the adoption of John Bresnehan, nor did she in any way consent to such adoption. It appears that she first learned of such proceedings following the death of her husband. Sec. 4021, Stats. 1917, which was the statute in force at the time of the proceedings in question, so far as material, provides:

"Any inhabitant of this state may petition the county court in the county of his residence for leave to adopt a child not his own by birth; but no such petition made by a married person shall be granted unless the husband or wife of the petitioner shall join therein. . . ."

In *Adoption of Bearby*, 185 Wis. 33, 200 N. W. 686, the court said:

"Adoption proceedings are statutory, and it is fundamental that the statutory prerequisites of jurisdiction must exist in order to authorize the court to act. The first step necessary to arouse the jurisdiction of the county court is a petition conforming to the statutory requirements. The stat-

ute definitely provides that if the petition is made by a married man no order of adoption shall be entered unless the wife of the married man join in the petition. While there is an increasing disposition on the part of courts to place fair and reasonable construction upon statutes and proceedings relating to the adoption of children so that mere irregularities of procedure may not defeat the beneficent purposes of the institution of adoption, *plain jurisdictional requirements must be observed.*"

*Lacher v. Venus,* 177 Wis. 558, 188 N. W. 613; *St. Vincent's Infant Asylum v. Central Wis. T. Co.* 189 Wis. 483, 485, 206 N. W. 921.

Appellant's counsel contends that the court had jurisdiction to consider the petition, and had jurisdiction to issue the order of adoption, because no reference was made in the petition or in the proceedings to the fact that the petitioner was a married man. There is no merit in this contention in view of the conceded fact that petitioner was at the time a married man. As said by the court in *Adoption of Bearby, supra:*

"It cannot be assumed that the deliberate legislative requirement that husband *and* wife shall join in a petition for adoption was without any purpose. Indeed, the public policy embodied in such a requirement is readily appreciated. It is to guarantee harmony on the part of the adopted parents upon the question of the adoption and to assure a welcome and affectionate reception of the child into its adopted home."

Appellant's counsel contends that any error in the adoption proceedings is now valid by operation of sec. 322.09, Stats. This statute was enacted as a part of ch. 439, Laws of 1929, and, so far as material, reads as follows:

"*Annulment of adoption; limitations.* (1) Failure to comply in adoption proceedings with the essential requirements of this chapter shall be ground for annulment of the order of adoption within two years after the date of entry thereof. Except as provided in subsection (2), any order for adoption heretofore or hereafter made by a court of record of this state shall be valid and conclusive and binding on all persons whomsoever and in all proceedings whatsoever

after two years from the date of entry thereof, and any person who participated in the proceedings or who makes claim to property rights by, through or under any person who so participated, shall be estopped from attacking the validity of such adoption proceeding after said two years; provided, however, that where the adoption proceedings were had within two years prior to July 1, 1929, the two-year limitation period above set forth shall be construed to mean within two years from July 1, 1929."

If this be a curative act and if it applies to all adoptions regardless of the time when made, we would have to hold that in proceedings where the court had acquired no jurisdiction its acts cannot be validated. *Nelson v. Rountree,* 23 Wis. 367; *Northern Pac. R. Co. v. Galvin, County Treas.* (C. C.) 85 Fed. 811; *McDaniel v. Correll,* 19 Ill. 226, 68 Am. Dec. 587, 589; 12 C. J. p. 1093, § 791.

It is further contended by appellant that a part of sec. 322.09, Stats., is a statute of limitation. Ch. 439, Laws of 1929, was passed August 30, 1929. It provides a period of two years from July 1, 1929, to attack all orders entered within two years prior to that date. If this statute applies in the instant case, the order of adoption having been made on August 23, 1918, the two-year limitation period would have expired on August 23, 1920, nine years before the statute was passed. The effect of the statute then would be that any remedy Mrs. Bresnehan had was barred immediately upon the enactment of the statute. What is said in *Relyea v. Tomahawk Paper & Pulp Co.* 102 Wis. 301, 305, 78 N. W. 412, is applicable here. The court there said:

"It is well settled that it is within legislative power to change a statute of limitations regarding the remedy for the enforcement of existing rights, *if a reasonable time be allowed to resort to existing remedies, or a reasonable remedy be provided, to enforce such rights.* A statute which undertakes to extinguish rights of action without giving such opportunity, is not deemed a statute of limitations, but an arbitrary, unlawful impairment of a constitutional right."

Sec. 322.09, Stats., contains a saving clause for all adoptions dating back to July 1, 1927, but as to all actions prior to that date the remedy is immediately destroyed. This court has held that a statute of limitation enacted after the cause of action accrued will still apply to the case, if a reasonable portion of the period of limitation remains unexpired when such statute goes into effect. *Parker v. Kane,* 4 Wis. *1; *Smith v. Packard,* 12 Wis. *371; *Howell v. Howell,* 15 Wis. *55, 60; *Osborn v. Jaines,* 17 Wis. *573; 12 C. J. p. 978, § 574.

We must conclude that the order of adoption in the instant case, which in the first instance was void for lack of jurisdiction, cannot be validated and given force and effect by any of the provisions of sec. 322.09, Stats., whether said statute be interpreted as a curative act or as a statute of limitations. The order of adoption is null and void.

*By the Court.*—Judgment reversed. The cause is remanded to the county court, with directions to enter judgment in accordance with this opinion.

ROSENBERRY, C. J. (*dissenting*). I find myself unable to concur in the decision in this case, and shall briefly state my reasons therefor. I agree with the court that the adoption proceedings referred to in the opinion of the court were ineffective, and that John never became the adoptive son and legal heir of the deceased. As I read the will, it is perfectly clear in every respect and therefore not subject to construction. No ambiguity appears upon the face of the will. However, when the court proceeds to distribute the property in accordance with the terms of the will, it is discovered that the deceased had no legal heir other than his wife. When clause 2, which gave to her that part of his estate to which she is entitled under and by virtue of the laws of the state of Wisconsin, is satisfied, no part of the estate of the deceased remains to be distributed to the adoptive son, John.

The defect in this will arises, not from any ambiguity or a lack of clearness in the language of the will, but because of a mistaken belief on the part of the testator that he had a legally adopted son. As I view the matter, it being apparent that he intended this adoptive son to have some part of his estate, the court by some process of construction proceeds to reform the will, not to interpret it. It needs no interpretation. When the will as "construed" is applied to the estate of the deceased, the effect is exactly the same as if the court had reformed the second paragraph of the will to read:

"I give, devise and bequeath to my wife, Katherine Bresnehan, all that part of my estate to which she is entitled under and by virtue of the laws of the state of Wisconsin, the same as though no will had been by me made *and I had a legal heir surviving.*"

To my mind this is clear reformation and not construction. The will is reformed to do what the court thinks the testator would have done if he had in fact known that John was not his legally adopted son. This the court may not properly do. *Sherwood v. Sherwood,* 45 Wis. 357.

In *O'Hearn v. O'Hearn,* 114 Wis. 428, 90 N. W. 450, the court said:

"The dominating rule in construing wills is that the intention of the testator is to be ascertained from the words used, in the light of the surrounding circumstances, and that intention given effect. . . . The court cannot reform the will by changing its language or add provisions not written therein. It can only construe the instrument as written." See 1 Page, Wills, p. 291, § 172, and cases cited.

What the testator in this case was mistaken about was not the effect of the language used in his will, but about the validity of the adoption proceeding. No one knows what the testator would have done if he had known the true state of facts. In the light of the facts as they actually existed, the court by construction makes the will read as it thinks the

testator would have drawn it if he knew the true facts. In my opinion this amounts to a clear reformation. Because this is not within the power of the court, I am of the view that the judgment should be affirmed. Whether the mistake is such as to invalidate the will is a matter that need not be determined, as under the facts of this case it is a matter of no consequence whether the judgment be affirmed or the will be held invalid.

The following memorandum was filed March 31, 1936:

*By the Court.*—The mandate is amended to read as follows: "Judgment reversed. The cause is remanded to the county court with directions to enter judgment in accordance with this opinion, the costs of both parties on appeal to be paid out of the estate."

Respondent's motion for a rehearing is denied without costs.