Roche, Respondent, vs. Du Bois and another, Appellants.

*December 8, 1936—January 12, 1937.*

For the appellants there was a brief by *Grotophorst, Quale & Langer,* and oral argument by *H. M. Langer* and *Warren M. Dana,* all of Baraboo.

For the respondent there was a brief by *La Follette, Rogers & Roberts,* and oral argument by *John Ernest Roe,* all of Madison.

FOWLER, J. The trial court found that the premises had been lived in by the plaintiff and her husband and family since 1929, except during three or four of the winter months each year. There was testimony that for a part of this time the family lived in other property in Baraboo during the summer months. But on the point of actual living in and occupying the property involved the finding of the trial court cannot be held to be "against the great weight and clear preponderance of the evidence" and must be upheld.

Of course, that occupation of property shall constitute it a homestead, it must be occupied with the present intent of oc-

cupying and holding it as such. Upon this point the testimony of plaintiff and her husband is that they have always had that intent ever since they purchased it, and that in 1929 the husband started to dig a basement for a dwelling house on the premises which they were prevented from erecting because unable to procure funds therefor. The court might rightly believe this testimony, and the finding of the trial court on the question of intent must be sustained.

The appellants claim that this evidence of intent is wholly overcome by the voting of the respondent and her husband during the period in the city of Baraboo instead of the town of Baraboo, where the premises involved are located. Evidence of place of voting usually has strong bearing on the question of intent. *Pedersen v. Nielsen,* 212 Wis. 608, 612, 250 N. W. 400. Still the fact is not absolutely controlling. *Minnesota Stonewear Co. v. McCrossen,* 110 Wis. 316, 85 N. W. 1019. The trial court's findings upon this point must be sustained.

The respondent claims that the premises were occupied for agricultural purposes. Such part of them as were used to raise vegetables were so occupied no doubt, but that part of them that was occupied by cottages rented out to tourists cannot be considered as used for agricultural purposes in a precise or strict sense. However, the word "agricultural" in the homestead statute (sec. 272.20) has been construed to have been used merely to distinguish rural from city or village property, rather than in a technical sense. *Binzel v. Grogan,* 67 Wis. 147, 29 N. W. 895. Within the ruling of that case the whole premises must be held to have been used for agricultural purposes, unless the maintenance of the summer cottages thereon for renting to tourists warrants excluding the portion so used from the homestead.

The appellants contend that the cottages rented to tourists cannot be held to be homestead property, and that this use of the premises gives character to the whole occupation and

prevents the respondents from claiming any of the property as a homestead. Under a statement of the California court, *McKay v. Gersford,* 163 Cal. 243, 124 Pac. 1016, this would seem to depend on whether the business of renting the cottages is conducted for the purpose of maintaining a home or Mrs. Roche is incidentally occupying the premises for the purpose of carrying on the business of renting cottages. The findings indicate that the trial court was of the opinion that the situation first stated obtained, so that, if this rule be applied, the trial court's conclusion must be upheld.

The appellants claim that, even though the cottage occupied by the family and the garden be considered as a homestead, the part occupied by the cottages rented to tourists cannot be so considered under the rule early established in this state that premises may be divided vertically and part be considered a homestead and part not. This was originally laid down as the rule as to city and village property. *Schoffen v. Landauer,* 60 Wis. 334, 19 N. W. 95. Respondent claims that, since the amendment of the homestead statute limiting the amount of the exemption to $5,000, this rule no longer obtains, as the limitation of the exemption renders inapplicable the reason for it, which was that without vertical division one might by erection of valuable buildings on his one-fourth acre for rental or business purposes obtain exemption of property of unlimited value. We need not pass upon this contention, however, as we consider that the character and the use of the buildings rented to tourists are not such a use as warrants division even if the maintenance of separate dwellings or other buildings rented to tenants on the quarter acre of city or village property would require it. Nor do we need to consider whether the maintenance of other buildings as suggested on property outside city or village limits would require such division. Here we have what may rightly be considered a dwelling house and garden occupied

as a homestead with fourteen small structures used as lodgings or sleeping rooms by tourists in the summertime for which the owner exacts a nightly or weekly charge. The situation is not materially different from an owner's living in and operating a hotel on premises. Premises so occupied and used constitute a homestead. *Harriman v. Queen Ins. Co.* 49 Wis. 71, 5 N. W. 12. Nor is it materially different from a large dwelling house containing rooms to let to roomers or occupied by boarders. In the early case of *Casselman v. Packard,* 16 Wis. *114, which applied the rule of vertical division, it is stated that "In addition to the dwelling, a person perhaps might erect a small shop, or building of that character, on the lot, which he himself used and occupied for the purpose of [carrying on] his trade or business, without forfeiting the exemption." This idea is applied as a rule of law in the recent case of *Will of Bresnehan,* 221 Wis. 51, 265 N. W. 93, wherein a vacant city lot, on the front of which was the dwelling house of the owner and on the rear of which was a building the first story of which was used by the owner as a garage for the keeping of his automobile and a truck used in his plumbing business and the storage of supplies used in such business, and the upper story of which was rented to tenants as their dwelling place. The opinion, page 62, quotes from *Binzel v. Grogan, supra,* to the effect that the homestead statute applies to the whole of the exempted tract regardless of the uses to which the owner devotes it, provided he resides thereon. The *Bresnehan Case* should not be construed as overruling the cases providing for vertical division of the premises, but as somewhat limiting their application. The facts of this case are indistinguishable from those involved in *In re Shepardson* (D. C.), 28 Fed. (2d) 353, wherein two parcels on opposite sides of a road were held to be comprised in the owner's homestead. On one parcel the owner resided, and on the other were a

building used for sale of merchandise and gasoline, a barn, and a small house and nine cabins which were rented to tourists.

Error is assigned because the trial court admitted in evidence an order of the federal court in proceedings instituted by respondent as a bankrupt which adjudged the premises in suit as her homestead and enjoined one of the defendants herein from selling the premises on execution issued on his judgment. The admission of this order was doubtless erroneous. Whether premises of the bankrupt constitute a homestead is for determination of the state courts wherever the claims of judgment creditors are involved which are claimed to be a lien thereon. The following cases directly or indirectly support this proposition: *Lockwood v. Exchange Bank,* 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061; *In re Jackson* (D. C.), 116 Fed. 46; *In re Grimes* (D. C.), 96 Fed. 529; *In re MacKissic* (D. C.), 171 Fed. 259; *Birmingham Finance Co. v. Chisolm* (C. C. A.), 284 Fed. 840; *In re Arnall* (D. C.), 285 Fed. 654; *In re Dittmar* (C. C. A.), 249 Fed. 606. The district court recognized the correctness of this proposition and vacated its order on motion of the judgment creditor so far as it enjoined sale on execution. But, although we consider the receipt of the evidence erroneous, and although the trial judge recites the order of the federal court in his findings, we consider that it does not appear that its receipt was prejudicial. The evidence aside from the order supports the trial judge's findings of fact on which rests his conclusion that the premises are the plaintiff's homestead, and it is apparent that the findings and conclusion would have been made as they are had the order of the federal court not been received in evidence.

The appellants contend that the court erred in finding that the interest of the respondent in the exempt property was of less value than $5,000. Admittedly there is a mortgage on the property on which $2,200 is due, unpaid tax liens of

$593.98, and mechanics' liens of approximately $1,200. Each of these liens is superior to the liens of the judgments. There was testimony of witnesses of the defendants that the property was worth $10,000 to $12,000. While the testimony of the respondent's witnesses supports the conclusion of the trial court that the present value of respondent's equity in the property is worth less than $5,000 over the amount of the liens superior to the appellants' judgments, we are of opinion that the judgment of the court went too far in adjudging that the premises are "wholly exempt from sale and not subject to the lien of any of the [appellants'] judgments."

At the time the instant proceeding was commenced, sec. 272.20 (2), Stats. 1933, was still in force and a petition was filed pursuant thereto. The statute was substantially changed by sec. 232, ch. 541, Laws of 1935, but this chapter did not go into effect until January 1, 1936. We need not consider the effect of the change thus effected, because the rights of the parties are governed by the statute as it stood in 1933. The provision of the statute so governing was that on the filing of a petition such as was filed herein, if it should satisfactorily appear to the court that the allegations of the petition (as to claim of homestead, and its value) were true, the court should "make an order so determining and that such homestead is not subject to the lien of said judgments," and that on the filing of a certified copy of the order in the office of the register of deeds the same should be "conclusive for a period of one year from the date [of the order] . . . unless . . . vacated on appeal." The 1935 statutes contemplate a judgment rather than an order, and a judgment was entered herein, but the judgment, instead of reading as above quoted, should have read "are exempt from sale and not subject to the lien of any of the defendants' judgments for the period of one year from the date hereof." Otherwise the judgment might be subject to the construction that the property ought

not be subjected to defendants' judgments if during the life of the judgments it should so increase in value as to make plaintiff's equity exceed $5,000 in value, and it was manifestly the intent of the 1933 statutes that a homestead would be subject to sale on execution one year after the date of an order such as was here intended by judgment if the owner's interest therein then exceeded $5,000 in value. Sec. 272.21, Stats. 1933. The modification of the judgment here suggested was not asked for by the defendants, and the point was not discussed in the briefs, but we consider that the modification should be made in order to declare correctly the rights of the parties as sec. 272.20 (2), Stats. 1933, which the court was attempting to follow contemplates should be done. The prayer of plaintiff's petition is that "the court declare said premises to be a homestead and exempt from the liens of said judgments for the period of one year, as provided by statute." The statute referred to is sec. 272.20 (2), Stats. 1933. The plaintiff asked for what she was entitled to under that statute and should not be granted any more, either expressly or by possible implication.

Other minor assignments of error are made, respecting alleged restriction of cross-examination, exclusion of testimony and undue curtailing of defendants' time for presenting their evidence, but we consider that none of them, if technically proper, prejudicially affected the defendants. Certainly prejudice does not "affirmatively appear from the entire record," and we are admonished by sec. 274.37, Stats., not to reverse cases for error when prejudice does not so appear.

*By the Court.*—The judgment is modified as indicated in the opinion, and as so modified is affirmed, with costs to the respondent.