STATE (Board of Regents of the University of Wisconsin), Appellant, v. CITY OF MADISON and another, Respondents.

*No. 26.   Argued June 6, 1972.—Decided June 30, 1972.*
(Also reported in 198 N. W. 2d 615.)

428

430

For the appellant the cause was argued by *John C. Murphy,* assistant attorney general, with whom on the briefs was *Robert W. Warren,* attorney general.

For the respondent city of Madison there was a brief by *Edwin Conrad,* city attorney, and *Larry W. O'Brien,* assistant city attorney, and oral argument by *Mr. O'Brien.*

HANLEY, J.   Two issues are presented on this appeal: (1) Is the land of the Charmany Research Center "agricultural land" within the meaning of sec. 70.116, Stats., and therefore subject to taxation by the city; and

(2) Does sec. 70.116, Stats., violate the uniform taxation provision of art. VIII, sec. 1, of the Wisconsin Constitution?

*Agricultural land.*

Although the general rule of taxation is that all property, wherever located and by whomever owned, is subject to taxation, with the property owner having the burden of proving that he falls within an exception to that rule, it has been held that an exemption in favor of the state must be construed to make the exemption the rule and taxation the exception. *Aberg v. Moe* (1929), 198 Wis. 349, 358, 224 N. W. 132, 226 N. W. 301, certiorari denied, 280 U. S. 522, 50 Sup. Ct. 69, 74 L. Ed. 590; *State ex rel. Wisconsin University Building Corp. v. Bareis* (1950), 257 Wis. 497, 501, 44 N. W. 2d 259. Therefore, sec. 70.11 (1), Stats.,[1] should be liberally construed in favor of the state. A clear manifestation of the intent to tax is required before state property can be subjct to taxation. 84 C. J. S., *Taxation,* p. 386, sec. 200. It is apparent, however, that sec. 70.116 [2] is a clear manifestation of the legislature's intent to subject cer-

[1] "70.11 **Property exempted from taxation.** The property described in this section is exempted from general property taxes:

"(1) PROPERTY OF THE STATE. Property owned by this state except land contracted to be sold by the state. . . ."

[2] "70.116 **Taxation of university agricultural lands.** All agricultural lands owned or held by the board of regents of the university of Wisconsin including those used for experimental purposes shall be subject only to the tax levied for school purposes the same as other real estate. If such taxes are not paid, the real estate shall be subject to tax sale as are privately owned lands."

tain property owned by the state or an agency thereof to taxation.

The use made of property determines whether it is subject to taxation or whether it is entitled to tax exemption. *Men's Halls Stores, Inc. v. Dane County* (1955), 269 Wis. 84, 89, 69 N. W. 2d 213; *Frank Lloyd Wright Foundation v. Wyoming* (1954), 267 Wis. 599, 605, 66 N. W. 2d 642. Therefore, the initial determination to be made in this case is whether or not the property comprising the Charmany Research Center is used as "agricultural land" within the terms of sec. 70.116, Stats. The regents do not contend that the entire 152.6 acres of Charmany Farms are entitled to exemption from taxation by the city; they only protest the assessment of tax against the 14.58-acre parcel on which the research center is located. Since the use of property is the important consideration, merely interpreting the word "agricultural" as a convenient distinction between rural and urban land, as done in cases dealing with the homestead exemption statute,[3] is insufficient.

In the absence of a statutory definition, the common and generally understood meaning of a word should be applied in the construction of a statute. *A. O. Smith Corp. v. Department of Revenue* (1969), 43 Wis. 2d 420, 429, 168 N. W. 2d 887. Webster's, *New International Dictionary* (3d ed. unabridged) defines "agricultural" as follows:

"[O]f, relating to, or used in agriculture . . . : characterized by or engaged in farming as the chief occupation . . . : founded or designed to promote the interest or study of agriculture . . . : of or having the characteristics of the farmer or his way of life . . . ."

The dictionary definition of the term "agriculture" is:

[3] *Roche v. Du Bois* (1937), 223 Wis. 438, 441, 271 N. W. 84; *Estate of McKenzie* (1939), 232 Wis. 425, 429, 287 N. W. 695.

"[T]he science or art of cultivating the soil, harvesting crops, and raising livestock: Tillage, Husbandry, Farming: the science or art of the production of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their disposal (as by marketing). . . ."

We think that the term "agricultural lands" is synonymous with "land of agricultural character" which indicates that the land in question either must actually be used in connection with raising crops or livestock, or be capable of being readily prepared for such use. In order to constitute "agricultural lands," the property must have as its primary use the production of plants or livestock useful to man. Under such definition of "agricultural land" the land used by the Charmany Research Center does not fall within the generally understood meaning of that term.

It has frequently been stated that the findings of the trial court are to be given great weight in this court and will not be upset unless they are contrary to the great weight and clear preponderance of the evidence. *Mitchell v. Western Casualty & Surety Co.* (1966), 30 Wis. 2d 419, 421, 141 N. W. 2d 212. Here, however, the trial court based its judgment on factors which have little or no relevance to the common definition of "agricultural land" and its findings must therefore be overturned.

The court observed that the center was established on what were clearly agricultural lands. This fact, however, has no bearing on the question of whether or not the lands are presently used for agriculture. Much of what is urban land today was once devoted to agricultural uses. The trial court also noted that the Charmany Research Center is operated under the auspices of the college of agriculture and life sciences of the University of Wisconsin. The fact that the center is part of the college of agriculture does not transform the research done at the center to agriculture. The college has many

departments which are not directly concerned with agriculture, such as the department of textiles, department of home management and family living, department of home economics education, and a toxicology center.

The trial court noted that crops were grown and harvested on that part of Charmany Farms which is not devoted to the center. The taxation of that part of the farm is not at issue on this appeal. The record reveals that the research center is separate and distinct from the remainder of the farm and is enclosed within a recently constructed fence. The balance of the farm is not used in conjunction with the research undertaken at the center. Therefore, the use to which the surrounding land is put is irrelevant in determining whether the land occupied by the center is agricultural land.

Since the experiments conducted at the center relate to agriculture and, at least to some extent, redound to the benefit of farmers, the trial court concluded that the land in question was taxable as agricultural land used for experimental purposes. It is true that the experiments conducted at the center aid agriculture in some degree, but most are also concerned with human health. Moreover, to say that this land is agricultural because research which benefits agriculture is conducted thereon seems to involve a circular pattern of reasoning which would lead to the result that research facilities, no matter where located, would be considered agricultural lands. The trial court correctly noted that many farm animals are used in the research projects undertaken at the center and that some of the experiments relate directly to the study of disease in those animals. However, many nonagricultural animals are also used.[4]

---

[4] See: Sprague-Dawley, Inc. v. Moore (1968), 37 Wis. 2d 689, 155 N. W. 2d 579, wherein it was held that white rats raised for experimental purposes cannot be considered agricultural animals as that term is used in the unemployment compensation statute.

Most of the animals are chosen because they make ideal models for the study of diseases common to both man and animals.

The fact that some animals are bred at the center was also a basis for the trial court's judgment. However, the purposes for breeding the animals are related to research. It is necessary to breed cows in order to have lactating animals for the study of infections of the mammary gland and to develop methods for the detection of adulterated milk utilized for human consumption. Pigs are bred in order to study the effect of viral infections on the fetus. Sheep are also bred as part of a study of reproductive physiology. Therefore, it is evident that animals are not bred for commercial purposes, but merely to aid in research projects.

We conclude that the lands on which the Charmany Research Center is located are not "agricultural lands" as that term is commonly understood. The principal activity of the center is research into the cause and cure of diseases which affect man and animal alike. The center would not be out of place on the University campus. Consequently the judgment of the trial court must be reversed.

Because of our ruling that the land of the Charmany Research Center is not taxable under sec. 70.116, Stats., we do not reach the merits of the remaining issue.

*By the Court.*—Judgment reversed.