STATE EX REL. B'NAI B'RITH FOUNDATION OF THE UNITED
STATES, Appellant, v. WALWORTH COUNTY BOARD OF
ADJUSTMENT and others, Respondents.

*No. 408.   Argued May 2, 1973.—Decided June 18, 1973.*
(Also reported in 208 N. W. 2d 113.)

298

For the appellant there were briefs by *Quarles, Herriott, Clemons, Teschner & Noelke,* attorneys, and *Maxwell H. Herriott* and *Steven R. Duback* of counsel, all of Milwaukee, and oral argument by *Maxwell H. Herriott.*

For respondent Walworth County Board of Adjustment there was a brief and oral argument by *William L. Seymour,* corporation counsel.

For respondents Lauderdale Lakes Improvement Association and James and Dorothy Dow there was a brief by *Milton E. Neshek* and *Richard A. Howarth, Jr.,* and *Godfrey, Neshek, Worth & Howarth, S. C.,* all of Elkhorn, and oral argument by *Milton E. Neshek.*

WILKIE, J. Two issues are raised by this appeal:

1. Did the trial court err in its ruling that the evidence established the use to which appellant intended

to put its property was not within either of the two Walworth county zoning ordinances?

2. Do the Walworth county zoning ordinances violate appellant's rights under the United States and Wisconsin Constitutions?

*Is intended use within zoning ordinances?*

Appellant's chief contention is that its proposed use of the 28 acres is included within the permitted uses of the applicable zoning ordinances, and that the circuit court's conclusion to the contrary is not supported by the credible evidence. According to appellant, the trial court adequately summarized the application statement of the intended use of the 28 acres in question under both Walworth county zoning ordinances:

" '1. *Conference Center*—to include programs for adults in current topics of interest to members of B'nai B'rith, primarily religious and educational.
" '2. *Leadership Training Center*—for special short-term sessions to train teenagers and young adults to be more responsible members of society and more responsive to their Jewish faith.
" '3. *Children's Program—for 8-to-16-year-olds:* to provide a summer program emphasizing religious programs, educational discussions, and an incidental role for the recreational programs that can exist concurrently with the other two.' "

Mr. Samuel B. Skolnick, a director of appellant's outdoor education program, testified at the hearing before the board of adjustment that appellant's intended use of the entire acreage owned by B'nai B'rith could be separated into two categories on the basis of age. According to Skolnick, the 28 acres for which occupancy and zoning permits were refused would be used solely for the year-round conference center (adults) and leadership training center (young adults). These centers, he testified, would house from 30 to 70 persons for from one to seven weeks.

The staff, according to appellant's application, would consist of rabbis, social workers and educators, and "[p]rimary emphasis will be placed on subjects involving the Jewish faith."

Skolnick further testified that the children, from the ages of eight to sixteen years, would occupy the B'nai B'rith acreage east of Highway 12 chiefly during the months of July and August. While Skolnik would not comment upon the maximum number of children anticipated by appellant, its brief suggests the number to be around 400. These children, while using the educational and recreational facilities located on the 28 acres in respondent's residence district "A," would be housed and fed on the east tract. According to appellant's application the meals would be prepared in the Main House on the 28-acre tract but transported to the "Trout Pond Lodge" east of Highway 12. According to Skolnick, the majority of time in the youth programs would be spent in educational programs. These programs include classes in arts and crafts, camp craft, nature, athletics, drama and music, current affairs, and religious programs which include daily worship and Sabbath services and Hebrew and Bible classes.

Appellant's zoning applications also listed the following adult recreational facilities to be used on the 28-acre tract: swimming pool and cabana, rowboats and canoes, a miniature and regular golf course, and tennis courts. Changes in the existing buildings would involve shifting of beds in several houses for maximum space advantage and the conversion of the farm buildings into classrooms and an auditorium. Children's program activities listed in appellant's application are: swimming pool and waterfront activities, basketball and volleyball, minor use of the golf course, and other activities.[2]

[2] The proposed plans include the building of a new lake, permanent housing and additional recreational facilities on the property east of Highway 12.

The two Walworth county zoning ordinances are identical with respect to residence district "A." The pertinent provisions of the Shoreland Zoning Ordinance and the amended zoning ordinance of 1962 are as follows:

"Section III. Residence District 'A'
"Use. In the Residence District 'A' no building or premises shall be used and no building shall hereafter be erected, moved or structurally altered, unless otherwise provided in this ordinance, except for one or more of the following specified uses:
"1. Single family dwellings.
"2. Churches, public and parochial schools.
" . . .
"4. Parks, playgrounds, swimming pools, tennis courts and bathing beaches. It is considered desirable that each such park or playground comply as far as possible with the yard and parking requirements established for recreation camps in Section IV. . . .
" . . .
"7. Accessory buildings, including private garages and buildings clearly incidental to the residential use of the property, provided, however, that no accessory building may be used as a separate dwelling unit.
" . . .
"10. Home occupations, when such occupation is incidental to the residential use of the premises and does not involve any external alteration that would effect a substantial change in the residential character of the building; . . .
"11. Professional offices, when such office is conducted solely by a member or members of the resident family, entirely within the residence and incidental to the residential use of the premises; provided further that there shall be no external alterations that would effect a substantial change in the residential character of the building, . . ." [3]

The amended zoning ordinance of 1962 defines a single family dwelling as "[a] detached building designed for,

---

[3] The amended zoning ordinance of 1962, Walworth County, Wisconsin, Sec. III, Residence District "A." Identical is the Shoreland Zoning Ordinance for Walworth County, Wisconsin, Sec. 3.2, RA-Residence District "A."

and occupied exclusively by, one family." [4] A family is defined as "[a]ny number of individuals related by blood, adoption, marriage, or not to exceed 5 persons not so related, living together on the premises as a single housekeeping unit, including any domestic servants." [5]

Appellant contends each and every one of its intended uses of the 28 acres subject to the Residence District "A" designation of the two Walworth county zoning ordinances is a permitted use thereunder. Thus, appellant contends its main use of the acreage as an educational and religious training center falls within the Residence District "A" authorization of schools and churches. Additionally, it is contended that all of the recreational aspects of the intended use are also permitted under the ordinance's "A" district. Appellant urges this court to recognize the spirit of the ordinance rather than its letter,[6] and to construe any ambiguities in favor of the free and unrestricted use of the property.[7] Appellant also cites, in its reply brief, the utilization in the ordinances of the word "uses" to describe permissible structures rather than buildings and argues that as a result an activity or proposed use must be assigned to that zoning district "which best fits the totality of proposed uses." According to appellant, the totality of its proposed uses on the 28 acres are educational and religious and, therefore, such uses fit within the school and church "uses" permitted within Residence District "A."

The standard of review on certiorari of an administrative board action has long been "the findings of the board upon the facts before it are conclusive if in any reason-

---

[4] Amended ordinance, *supra*, at page 2; *see also* Shoreland Ordinance, *supra*, at page 64.

[5] Amended ordinance, *supra*, at page 2; *see also* Shoreland Ordinance, *supra*, at page 65.

[6] *E.g., State ex rel. Morehouse v. Hunt* (1940), 235 Wis. 358, 369, 291 N. W. 745.

[7] *Missionaries of La Salette v. Whitefish Bay* (1954), 267 Wis. 609, 614, 66 N. W. 2d 627.

able view the evidence sustains them." [8] While appellant is correct in citing *Missionaries of La Salette v. Whitefish Bay* for the proposition that ambiguities in zoning ordinances should be construed in favor of the free and unrestricted use of property,[9] this court has recently held in a number of cases, on the other hand, that zoning ordinances are to be liberally construed in favor of the municipality,[10] and that judicial review of the legislative function of zoning is "restricted to cases of abuse of discretion, excess of power, or error of law." [11]

In the instant case the county planner, Mr. Johnson, in denying appellant's zoning applications, stated:

"It is my opinion that use 2: 'Churches, public and parochial schools' of Section III of the Zoning Ordinance does not include the main uses listed under your general intent section, such as 1) Conference Center, 2) Leadership Training Center, and 3) Children's Program. My interpretation is that a 'school' by the Zoning Ordinance is meant to be the conventional school building commonly located in most municipalities."

Mr. Johnson further stated that the appellant's intended use more accurately fitted Section XIV A 9 (d) of the 1962 zoning ordinance. This section provides:

"9. The board of adjustment, after investigation and public hearing, may authorize the location of any of the following buildings or uses in any district from which they are excluded by this ordinance, provided the board of adjustment shall find . . . .

". . .

---

[8] *State ex rel. Morehouse v. Hunt, supra,* footnote 6, at page 367. *See also: State ex rel. Wasilewski v. Board of School Directors* (1961), 14 Wis. 2d 243, 259, 111 N. W. 2d 198; appeal denied, 370 U. S. 720, 82 Sup. Ct. 1574, 8 L. Ed. 2d 802.

[9] *Supra,* footnote 7.

[10] *Cushman v. Racine* (1968), 39 Wis. 2d 303, 306, 159 N. W. 2d 67. *See also: State ex rel. American Oil Co. v. Bessent* (1965), 27 Wis. 2d 537, 546, 135 N. W. 2d 317.

[11] *Buhler v. Racine County* (1966), 33 Wis. 2d 137, 146, 146 N. W. 2d 403.

"(d) Institutions, public or private, of an educational, philanthropic or charitable nature." [12]

The board of adjustment expressly adopted these reasons as their own in affirming the county planner's denial of appellant's applications. In its review this court must, therefore, determine whether the orders of the county planner and county board of adjustment are, in any reasonable view, supported by the credible evidence.

Critical to appellant's contentions is the meaning of the words "school" and "church" which are used in the two zoning ordinances to describe permitted uses. While the ordinances expressly define a variety of terms, they are silent on both these words. For several reasons relating to the construction of statutes and ordinances, we conclude that the Walworth county zoning ordinances did not contemplate appellant's intended use of the 28 acres in question in their usage of the words "church" and "school." The first of these reasons is this court's continued adherence to the principle that long and uninterrupted practice under an ambiguous statute is good evidence of its construction. In *State ex rel. Boulton v. Zimmerman* this court stated:

". . . Where, as here, there exists an ambiguity in a statute, the past practical construction over an extensive period by the officer or administrative agency charged with its administration is to be accorded great weight in determining the statute's meaning." [13]

This rule has also been applied to municipal ordinances. [14]

In the instant case Mr. James A. Johnson, the Walworth county zoning administrator since 1966, testified at the hearing before the board of adjustment as to his

---

[12] Amended ordinance, *supra*, at page 31.

[13] (1964), 25 Wis. 2d 457, 462, 130 N. W. 2d 753.

[14] *Milwaukee Fire Fighters Asso. v. Milwaukee* (1971), 50 Wis. 2d 9, 18, 183 N. W. 2d 18.

reasons for denying appellant's occupancy and zoning permit applications under the ordinances. Johnson, on direct examination, stated that when confronted with uses as the one in the instant case it was his office's practice "to refer to similar uses in the county based on the interpretations and continuous uniform enforcement of the ordinances." According to Johnson, since he had been zoning administrator a number of similar parallel proposed uses had been approved by the board of adjustment. He stated, "I am aware of approximately 50 operations similar to this in nature that are defined by zoning ordinances as recreational camps and classified as such [in] our zoning ordinances." Johnson further stated that most of the other uses which had been approved in other zoning districts combine recreational and educational uses:

". . . To one degree or the other I think they all combine both of these uses so it's very difficult to take a look at one particular application no matter how well we define it it's more of an educational institution than any other very similar operation because a church camp or other nonprofit camps are basically for educational and recreational purposes so that this decision that I made was based on not only a specific reading of the ordinance but based on a precedent set down by uniform administration of the past. To my knowledge this is a continuation of administrator precedent set prior to my time as zoning administrator and this could be shown by a number of camps we do have in the county under this category."

The zoning administrator further testified that some of the 50 camps were located on Lauderdale Lake but also noted that these camps had been established prior to the enactment of the 1962 zoning ordinance.

It is therefore clear that the only evidence submitted before the board of adjustment was to the effect that it was the long and uninterrupted practice of the zoning officials in Walworth county not to regard proposed uses, such as appellant's, as falling within the zoning district

"A" allowance of churches or schools. This evidence carries great weight on review. Appellant attempts to diminish the importance of this evidence of uniform interpretation of the ordinance by alleging there is no credible evidence to support the zoning administrator's "conclusion" that the 50 other camps were similar to appellant's intended usage. However, the respondent municipality does not have the burden of proving the validity of its ordinance and its construction. Rather, appellant has the burden of showing its invalidity. In *State ex rel. Newman v. Pagels* it was stated:

". . . Under well established rules, where a municipal body enacts regulations pursuant to authority expressly granted, all presumptions are in favor of its validity, and any person attacking it must make the fact of its invalidity clearly appear." [15]

The same presumption applies to the interpretation of an ordinance or statute by those responsible for its enforcement. [16]

The second reason appellant's intended use of its 28-acre plot on Middle Lake is not authorized by the Walworth county zoning ordinances' usage of the words "church" and "school" lies in the well-established rule of statutory construction that nontechnical words and phrases are to be construed according to their common and ordinary usage. In *State Bank of Drummond v. Nuesse,* this court said:

"The popular or reasonable import of words furnishes the general rule for the interpretation of public laws. The plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or hidden sense." [17]

[15] (1933), 212 Wis. 475, 479, 250 N. W. 430. *See also: State ex rel. American Oil Co. v. Bessent, supra,* footnote 10, at page 546; *J & N Corp. v. Green Bay* (1965), 28 Wis. 2d 583, 585, 137 N. W. 2d 434.

[16] *Supra,* footnotes 13 and 14.

[17] (1961), 13 Wis. 2d 74, 78, 108 N. W. 2d 283.

Very recently, in *State (Board of Regents) v. Madison,* this rule was again reiterated:

"In the absence of a statutory definition, the common and generally understood meaning of a word should be applied in the construction of a statute." [18]

In addition to these rules of ordinary and practical construction, this court has also adhered to the rule that the intent of a given section of a statute or ordinance must be derived from the act as a whole. In *Smith v. Brookfield* this court favorably quoted from McQuillin's treatise on *Municipal Corporations:*

" 'An ordinance must be construed as an entirety, and the legislative intention that is contained within it must be determined accordingly, and not from a part thereof. As sometimes stated: "Legislative intent must be gathered from the four corners of the ordinance, and, if lawful, given effect by the courts." "It is an established rule in the exposition of statutes that the intention of the lawgiver is to be deduced from a view of the whole and every part of a statute, taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of terms." Hence, provisions of an ordinance are to be read and construed in the light of the whole ordinance, to the end of resolving, if possible, any doubt or conflict in meaning.' " [19]

As the rules of construction for statutes have been long held applicable to the construction of municipal ordinances, the foregoing rules apply in the instant case. [20]

What then may this court deduce from the Walworth county ordinances which sheds light upon their usage

---

[18] (1972), 55 Wis. 2d 427, 433, 198 N. W. 2d 615.

[19] (1956), 272 Wis. 1, 5, 6, 74 N. W. 2d 770; 6 McQuillin, *Municipal Corporations* (3d ed.), p. 132, sec. 20.54. *See also Maloney v. Industrial Comm.* (1943), 242 Wis. 165, 7 N. W. 2d 580, 9 N. W. 2d 623.

[20] *Ashland Water Co. v. Ashland County* (1894), 87 Wis. 209, 211, 58 N. W. 235: "The rules for the construction of statutes and of municipal ordinances are the same."

of the words "school" and "church?" Both ordinances, it is clear, envision Residence District "A" as an exclusively single family residential area. Throughout the provisions concerning this residence district the emphasis is upon retaining the residential character of buildings, even where small family businesses are allowed to be conducted therein. Thus, for example, subs. 10 and 11 of the 1962 zoning ordinance's Residence District "A" permit home occupations and professional offices "provided further that there shall be no external alterations that would effect a substantial change in the residential character of the building."[21] The ordinances further provide that recreational camps may coexist with single family dwellings in Residence District "B." Finally, in the catch-all district which is denominated Residence District "C," the ordinance permits multiple family dwellings, recreational camps, lodging and boarding houses, and private clubs and fraternities. Also included in this district are convalescent homes and nursing homes.

It is therefore clear that the zoning ordinances envision residence districts in a descending order of restrictiveness with the most restrictive being "A." The foregoing rules of statutory and ordinance construction mandate this court's cognizance of the above scheme of residence districts when interpreting what is meant by the ordinance's use of "schools" and "church." In *Yanow v. Seven Oaks Park, Inc.*, a case involving the question of whether a post-high school institute for specialized religious training was permitted in a zoning district which permitted single family dwellings, public and parochial schools, churches and other places of worship, the New Jersey Supreme Court concluded that it was not the intent of the municipality to permit such schools in this residential area.[22] According to the court:

[21] Amended ordinance, *supra*, at page 8.
[22] (1953), 11 N. J. 341, 94 Atl. 2d 482.

"[T]he intent expressed was to permit such schools as are required for the good of the residential area, namely those established for the general education of the children of the neighborhood in the subjects and classes necessary to compliance with the state compulsory education laws, but to exclude institutions of higher or specialized education." [23]

The Walworth ordinances were designed with a similar intent—to preserve the purely residential character of the area along with the traditional concepts of church and school which serve the inhabitants of such area. While the cases cited by appellant concerning the expanding concepts of "church" and "school" in other jurisdictions are persuasive, this court must construe the Walworth county ordinances' use of such words as intended by their framers. That intent was to permit schools and churches which in a usual sense serve the people of the district. The appellant has not sufficiently shown that the ordinances intended the appellant's intended use. Recalling this court's rule that the findings of the board of adjustment or other zoning appeal board are conclusive if "in any reasonable view the evidence sustains them," [24] the instant findings were correctly sustained by the trial court.

Moreover the intended use contemplated living in to an extent not permitted in a single family residence district. Housing, feeding, and sleeping up to 75 persons at one time and for periods from one to seven weeks is not in accord with the single family residence district pattern spelled out by the zoning ordinances.

The trial court took judicial notice of the existence of a boy scout camp and a Lutheran camp which exercised "a similar use to that proposed by the petitioner," and which had apparently been treated as falling within

[23] *Id.* at page 348.
[24] *Supra,* footnote 8.

another residence district. It clearly appears that the trial court relied upon the testimony of the zoning administrator and its judicially noticing these two examples of such evidence, whether correct or not, was merely cumulative.

### *Was equal protection denied?*

Appellant contends that the denial of its intended use of the 28 acres is arbitrary and capricious and amounts to a denial of its rights under both state and federal constitutions. A zoning ordinance is presumed to be valid and one challenging such an ordinance "must make the fact of its invalidity clearly appear." [25] While it is true, as appellant contends, to be valid an ordinance must present a reasonable basis for the different treatment of persons or organizations,[26] there is nothing in the instant record to suggest that the denial of the applications for zoning and occupancy permits was arbitrary or unreasonable. The denial was in accord with practice of long standing and was pursuant to a validly enacted comprehensive zoning ordinance of long standing. Appellant must do more to establish arbitrariness than merely assert its existence.

*By the Court.*—Judgment affirmed.

---

[25] *State ex rel. Newman v. Pagels, supra,* footnote 15, at page 479. *See also: State ex rel. Lake Drive Baptist Church v. Bayside Village Board* (1961), 12 Wis. 2d 585, 602, 108 N. W. 2d 288.

[26] *See Boerschinger v. Elkay Enterprises, Inc.* (1966), 32 Wis. 2d 168, 172, 145 N. W. 2d 108.