ANTHONY S. EARL, Secretary Department of Natural Resources
Your predecessor in office asked my opinion on three questions involving the applicability of the forest crop law — subch. 1, ch. 77, Stats. — to land owned by the Board of Regents of the University of Wisconsin System.
 I.
The first question is whether property transferred to the University for the purpose of forestry and timber studies and related research, including biological studies, is to be treated as other than agricultural property and exempt from property taxation under sec. 70.11, Stats. No inquiry was made as to the authority of the Board of Regents to acquire property for these purposes, and I express no opinion on that point.
Section 70.11 (1), Stats., with exceptions not relevant here, exempts from property taxation property owned by the state. This exemption is equally applicable to lands held by and for the Board of Regents. State ex rel. Wisconsin Univ. Bldg. Corp. v.Bareis, 257 Wis. 497, 44 N.W.2d 259 (1950), and Aberg v. Moe,198 Wis. 349, *Page 79 224 N.W. 132 (1929). However, the Legislature has restricted the effect of this exemption by other statutes. Section 70.116 provides:
 "Taxation of university agricultural lands. All agricultural lands owned or held by the board of regents of the university of Wisconsin system including those used for experimental purposes shall be subject only to the tax levied for school purposes the same as other real estate. If such taxes are not paid, the real estate shall be subject to tax sale as are privately owned lands."[1]
It is not clear on the face of the statute whether agricultural lands include forest lands. In construing the statute, the following rule should be kept in mind:
 "Although the general rule of taxation is that all property, wherever located and by whomever owned, is subject to taxation, with the property owner having the burden of proving that he falls within an exception to that rule, it has been held that an exemption in favor of the state must be construed to make the exemption the rule and taxation the exception." State (Board of Regents) v. Madison, 55 Wis.2d 427, 432, 198 N.W.2d 615 (1972).
The opinion there, in construing sec. 70.116, went on to say, at pp. 433-434:
 ". . . Webster's, New International Dictionary (3d ed. unabridged) defines `agricultural' as follows:
 "`[O]f, relating to, or used in agriculture . . .: characterized by or engaged in farming as the chief occupation . . .: founded or designed to promote the interest or study of agriculture . . .: of or having the characteristics of the farmer or his way of life . . . .'
"The dictionary definition of the term `agriculture' is:
 "`[T]he science or art of cultivating the soil, harvesting crops, and raising livestock: Tillage, Husbandry. Farming: the science or art of the production *Page 80 
of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their disposal (as by marketing) . . . .'
 "We think that the term `agricultural lands' is synonymous with `land of agricultural character' which indicates that the land in question either must actually be used in connection with raising crops or livestock, or be capable of being readily prepared for such use . . . ."
Although the statutes contain no definition of agricultural lands expressly made applicable to the use of that term in sec. 70.116, ch. 70 does draw a distinction in other places between agricultural lands and forest lands. Section 70.32 (2)(b) provides that in a town the assessor shall classify the property subject to taxation in one of several classes. The classes include among others, agricultural, productive forestland and nonproductive forestland.
The forest crop law, in sec. 77.02 (3), provides as a condition for the entry of land under the law that the Department of Natural Resources must find that the land will be "held permanently for the growing of timber under sound forestry practices, rather than for agricultural . . . or other purposes."
In light of the foregoing statutes and the previously mentioned rule requiring a broad construction of a provision exempting state property from taxation, I believe that University lands held for the purpose of forestry and timber studies and related research, including biological studies, do not constitute agricultural lands subject to taxation under sec. 70.116, Stats., and would, therefore, be exempt from property taxation under sec.70.11 (1), Stats.
 II.
The second question is whether the University may qualify as an owner, under sec. 77.02, so that its land may be entered under the forest crop law.
While there is no provision in ch. 77, Stats., which expressly precludes the state or one of its agencies. including the University of Wisconsin, from entering its lands under the forest crop law, it is my opinion, based upon historical perspective of the statutes involved and upon sound principles of statutory construction and other logical considerations, that the University lacks such authority. *Page 81 
Historically, it appears that the forest crop law was designed to serve two primary functions.[2] One purpose was to provide a system for equitably taxing private lands in a fashion which would encourage the growing of timber on lands unsuitable for other purposes. Today, that program is implemented primarily under the Forest Crop and Woodland Tax Law provisions of ch. 77, Stats. The other function which the law served was to provide town governments with a source of revenue from tax delinquent unmarketable, cutover forest lands, and to encourage the reforestation of these lands while held by county governments. Today, that program is continued and implemented primarily under the provisions of secs. 28.10 and 28.11, Stats., relating to the establishment of county forests.
Such forest lands as are held by the University are neither private nor taxed lands upon which the provisions of ch. 77, Stats., could operate, nor are they "county forests" within the provisions of secs. 28.10 and 28.11, Stats. In addition, while the encouragement of forestation is an element common to chs. 28 and 77, Stats., the only suggestion of the direct involvement of the University under any of their provisions appears in sec.28.07, Stats., which provides:
 "28.07 Cooperation. The department [of natural resources] may cooperate with the college of agriculture of the university of Wisconsin and with departments of this or other states, with federal agencies or with counties, towns, corporations or individuals, to the best interest of the people and the state, in forest surveys, research in forestry and related subjects, forest protection and in assistance to landowners to secure adoption of better forestry practice."
Such statute does not relate to, nor support. the entry of University lands under the forest crop law.
Generally speaking, the Legislature determines which lands will be subject to a tax and which lands will be exempt. Property of the state is normally exempt and a clear manifestation of intent to tax state property must be shown before it can be subject to taxation. State (Board of Regents) v. Madison, supra, p. 432. Sections 70.115, 70.116 and 70.117, Stats., are examples of specifically *Page 82 
allowed legislative exceptions to the normal rule of exemption which attaches to state owned lands. I However, by no reasonable interpretation could any of those statutes be viewed as authorizing or directing the subjection of state lands to taxation under the forest crop law.
In addition, having concluded as we have that the University forest land is not subject to taxation even under sec. 70.116, Stats., I see no reason why the University would find it desirable to enter its forest lands under the forest crop law.
The purpose of the forest crop law is stated in sec. 77.01, Stats., to be the encouragement of forest growth and sound forestry practices on land not more useful for other purposes, in a manner which will not hamper the towns from receiving revenue from such lands. To effectuate this purpose, land entered under the law is subject to certain restrictions and possible penalties in exchange for property tax exemption or deferral. Since University land is already exempt from property taxation, entry of such land under the law would only serve as an attempt to subject it to various restrictions and penalties without any compensating advantage Therefore, it is clear that a literal application of the forest crop law to state land would severely limit the usefulness of such land.
In this regard it is also appropriate to note that statutes of general application, in particular those of a regulatory nature, are not considered to apply to the state, unless the state is explicitly included by appropriate language. State ex rel. Dept.of Public Instruction v. ILHR, 68 Wis.2d 677, 229 N.W.2d 591
(1975). No such "appropriate language" appears in the statutes here under consideration. In fact, they appear to exclude application to state lands. Intent to that effect is found in sec. 77.03, Stats., which specifically provides that entry of land under the forest crop law finalizes "a contract between thestate and the owner, running with said lands." (Emphasis added.). Since under normal rules of contract law the state, like any other contracting party, cannot enter into a contractual relationship with itself, the Legislature must obviously have intended and anticipated that the "owner" of the subject forest crop lands be an entity other than the state. *Page 83 
 III.
The third question asks whether the University must pay the withdrawal tax and penalty imposed by sec. 77.10, Stats., if it withdraws land which has previously been entered under the forest crop law.
This question will not normally arise under the facts assumed and discussed in answering your second inquiry, since as there indicated, state lands may not be entered under the forest crop law. However, this question might arise in the event that the University acquired land which the grantor had previously entered under the forest crop law, if the land were not withdrawn from the law prior to the transfer of title. The usual, and probably better, practice when a state agency desires to purchase land which is entered under the forest crop law, is to have the land withdrawn from the law prior to completion of the sale. In such a case, the liability for the deferred tax and penalty are discharged by the seller, and the land unquestionably passes to the state free from any restriction under the forest crop law.
While no authority exists for the state to enter its lands under the forest crop law, its agencies are not precluded from purchasing lands which are entered under the law. However, the same lack of authority which precludes such agencies from entering land under the forest crop law also normally precludes such agencies from maintaining acquired land under the program after acquisition. As previously pointed out, the state cannot enter into a contractual relationship with itself. Likewise, when the state purchases lands under the forest crop law, it cannot, as a purchaser and new owner, assume a contractual obligation running to itself. When the state purchases such forest crop land the commitments of the prior owner made to the state under the forest crop law merge with the state's title and are thereby discharged.
As stated in Restatement, Property sec. 555 (1):
 "The obligation arising out of a promise respecting the use of land is extinguished whenever the right to enforce the promise and the obligation upon it come to be in one person."
 And in Restatement, Contracts sec. 451: *Page 84 
 "Where a person subject to a contractual duty or to a duty to make compensation acquires the correlative right in the same capacity in which he owes the duty, the duty is discharged."
Another line of reasoning supports this conclusion.
If a lien has attached to land before the state acquires it, the state has an obligation to discharge that lien. An example of this is where the state obtains title after May 1st in a given year and before the property taxes for that year have been paid. Pursuant to secs. 70.01 and 70.10, Stats., the lien of the property taxes for that year attaches as of May 1st. Though the levy is not made until the tax roll showing those taxes has been delivered to the local treasurer (sometime in the summer or fall), the lien is deemed to date back to May 1st, because of the express provision in sec. 70.01. Foscato v. Byrne, 2 Wis.2d 520,523-524, 87 N.W.2d 512 (1958) and Van Dyke v. U.S., 156 F. Supp. 155,158 (1957). In contrast to the effective date of the property tax lien, the obligation to pay the withdrawal tax and penalty, under the forest crop law, cannot be said to create a lien which attaches to land conveyed to the state, effective as of a time prior to the conveyance.
The taxes due when land is withdrawn from the forest crop law are determined by the Department of Revenue, pursuant to secs.77.10 (2) and 77.04 (1), Stats., after the withdrawal. I find no specific language in the pertinent statutes even suggesting that the determination of the amount due creates a lien upon the land as of the time of withdrawal. Section 77.10 (1)(b), Stats., provides that, if a purchaser of land entered under the law declines to certify his intention to continue the practice of forestry thereon, his action is ground for canceling the entry under par. (a). Under that paragraph, the cancellation is accomplished by order of the Department of Natural Resources. Such an order cannot be issued until after the transfer of title; and in the absence of any provision for making the order relate back to the time the grantor still held title, the order must be viewed as operating only prospectively. Thus, there can be no levy — and without a levy, no lien — until after the grantee has acquired title. When the grantee is the state it would be too late for a lien to be effective, since there is no basis for making the lien date back to a time prior to the state's title to the land, and since state land is exempt from taxation.
It might be contended that the forest crop law makes towns third-party beneficiaries in contracts between the state and owners of land *Page 85 
and that the towns have certain rights as against the state, arising from the state's acquisition of lands entered under the law. The answer is that towns are no better off than counties in this regard. State v. Mutter, 23 Wis.2d 407, 127 N.W.2d 15
(1964), held that since counties are mere creatures of the state, the state can amend the forest crop law so as to increase the costs of withdrawing county lands from the program and make the amendment applicable to lands previously entered under the law. The opinion states, at page 412:
 ". . . The law is clear in Wisconsin that the legislature, in its relationship with municipal or quasi-municipal corporations of the state, is not obliged to heed prior legislative expressions. Thus, the legislature by statute can take away from a municipality what it has previously given to it by statute . . . ."
Also, see Marshfield v. Cameron, 24 Wis.2d 56, 63,127 N.W.2d 809.
BCL:EWW
[1] This opinion assumes, without deciding, the validity of sec. 70116, stats.
[2] Land Use Controls and Recreation in Northern Wisconsin, G. Graham Waite, 42 MLR 271 (1959).